IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE | : | CHAPTER 13 |
| PAUL J. EGAN AND | | |
| BARBARA A. EGAN, | : | |
| DEBTORS. | : | BANKRUPTCY NO. 10-10260-MDC |

# MEMORANDUM OPINION

BY: MAGDELINE D. COLEMAN, UNITED STATES BANKRUPTCY JUDGE

## INTRODUCTION

Before this Court is the Objection dated November 16, 2010 (the "Objection"), filed by the

Chapter 13 Trustee (the "Trustee") to the confirmation of the chapter 13 plan submitted by Paul J. Egan

and Barbara A. Egan (collectively, the "Debtors"). The substance of the Objection was originally raised

at a confirmation hearing held by this Court on October 7, 2010 (the "Hearing"), to address the Debtors'

proposed chapter 13 plan (the "Proposed Plan"). At the Hearing, the Trustee raised the issue of whether

the Debtors' may increase the amount of their post-petition contributions to their respective 401(k)

retirement plans and still comply with the requirement that all of the Debtors' projected disposable

income be devoted to plan payments. Unable to resolve whether the Debtors' proposed plan could be

confirmed, this Court set a briefing schedule to allow the parties to address the issues raised at the

Hearing. The parties agree that no material facts are in dispute and have filed a Stipulation of Facts dated

December 16, 2010, upon which this Court, along with the contents of the Debtors' schedules, relies. On

January 6, 2011, the Debtors filed a brief in support of confirmation of their proposed plan (the "Debtors'

Brief"). Shortly thereafter on January 13, 2011, the Trustee filed his response to the Debtors' Brief (the

"Response"). Having considered the issues raised by the parties at the Hearing and in their subsequent

filings, this Court will overrule the Trustee's Objection and confirm the Debtors' Proposed Plan.

## FACTUAL BACKGROUND

On January 13, 2010 (the "Petition Date"), the Debtors filed a joint petition for relief under

Chapter 13 of the Bankruptcy Code.  Together with their petition, the Debtors filed an Official Form

B22C - Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and

Disposable Income (the "Form B22C"), their required schedules and the Proposed Plan.  In the Debtors'

Schedule I, they listed monthly income of $4,388.09.  They listed on Schedule J a monthly net income of

$514.07.  The Debtors' current monthly income[1] as disclosed by their Form B22C is $8,455.76.[2]  Because

the Debtors' annualized CMI, $101,469.12,[3] exceeds the median family income for a Pennsylvania family

of two, the Debtors were required to complete the remainder of Form B22C to establish the amount of

their "disposable income."  As above-median debtors, they are required to file a plan with a minimum

applicable commitment period of five years and use the standard IRS expense deductions on their Form

B22C to calculate their disposable income.  As disclosed by the Debtors' Form B22C, their monthly

disposable income is $514.07.  This amount is consistent with the amount listed in Debtors' Schedule I

and Schedule J.

Consistent with the amount of disposable income disclosed by their Form B22C, the Debtors'

Proposed Plan calls for monthly payments of $514.07 for 60 months for a total budget of $30,844.20 over

the life of the Proposed Plan.  The Debtors have listed one secured claim in the amount of $167,562.00

related to a loan payable to the Franklin Mint Federal Credit Union that is secured by a mortgage of the

couple's residence (the "FMFCU Mortgage").  The Debtors are currently making monthly payments on

the FMFCU Mortgage outside of the Proposed Plan and in the amount of $1,601.40 per month.  Exclusive

of the sole secured claim, the Debtors' proof of claim docket lists the total unsecured claims asserted

against Debtors in the total amount of $83,135.00.  The Debtors' Proposed Plan proposes to pay all

unsecured claimants not less than 32.89% of their allowed claims.

Prior to filing for chapter 13 relief, the Debtors took three separate loans from their 401(k) plans

for the purpose of repaying then existing creditors.  As of the Petition Date, Mr. Egan owed $3,680.82

---

[1] The term "current monthly income" ("CMI") is defined as the average monthly income of the debtor from all sources over the six-month period preceding the filing of the schedule of current income required by §521(a).  *See* 11 U.S.C. §101(10A).
[2] The discrepancy between the Debtors' monthly income as listed by their Schedule I and their Form B22C is attributable to payroll deductions in the total amount of $4,067.67.
[3] $8,455.76 x 12 = $101,469.12.

relating to a loan in the amount of $4,075.00 advanced on or about September 9, 2009 from his

employer's retirement plan (the "Target 401(k)").  To repay this loan, Mr. Egan's employer is deducting

$55.69 from Mr. Egan's bi-weekly paycheck.  The last payment is scheduled to be made on September

12, 2012.  Upon completion of repayment, Mr. Egan plans to make a $115.69 bi-weekly contribution to

his Target 401(k), an increase of $55.69 over his contributions as of the Petition Date.  In addition to Mr.

Egan's loan, Mrs. Egan owed as of the Petition Date (i) $5,706.55 relating to a loan in the amount of

$25,000.00 advanced on or about August 10, 2007 from her employer's retirement plan (the "IBC

401(k)")[4] and (ii) $10,247.27 relating to a loan in the amount of $15,000.00 advanced on or about

November 16, 2008 from her IBC 401(k).  To repay her loans, Mrs. Egan's employer is deducting

$367.61 for the first loan and $207.28 for the second loan from Mrs. Egan's bi-weekly paycheck.  The

last payment on Mrs. Egan's first loan was made on August 12, 2010 and the last payment on Mrs.

Egan's second loan will be made on November 9, 2012.  Upon completion of her repayments, Mrs. Egan

plans to make a $207.28 bi-weekly contribution to her IBC 401(k), an increase of $170.71 over her

contributions as of the Petition Date (inclusive of Mr. Egan's $115.69 bi-weekly contribution to his

Target 401(k), the "Proposed Contributions").  Prior to the Petition Date, Mr. Egan was making a $60.00

bi-weekly contribution and Mrs. Egan was making a $24.57 bi-weekly contribution (the "Existing

Contributions").  Inclusive of both their Existing Contributions and their Proposed Contributions, the

amount of both Debtors' total contributions are significantly less than the legal limits provided by their

respective 401(k) plans.  As a result of the Proposed Contributions, the Debtors project their disposable

income to remain constant throughout the plan period.

Mr. Egan and Mrs. Egan are currently 58 and 54 years of age respectively.  The Debtors are both

presently employed.  Mr. Egan works for the Target Corporation ("Target") at its Mount Laurel, New

Jersey location.  Through the Target 401(k), Target offers to its employees a retirement plan in which

Target matches employee contributions up to five percent of an employee's annual salary.  The current

value of Mr. Egan's Target 401(k) is less than $10,000.00.  His only other retirement savings are limited

---

[4] The parties do not dispute whether the Target 401(k) or the IBC 401(k) are the type of account enumerated in §541(b)(7).

3

to a personal pension account with a balance of less than $5,000.00.  Mrs. Egan works for Independence

HealthCare Management, Inc. ("Independence") at its offices located in Philadelphia, Pennsylvania.

Through the IBC 401(k), Independence offers to its employees a retirement plan in which Independence

matches fifty percent of employee contributions up to eight percent of an employee's annual salary.  The

current value of Mrs. Egan's Independence 401(k) is approximately $150,000.00.  Mrs. Egan has

disclosed no other retirement savings.

DISCUSSION

In his Objection, the Trustee raised two grounds for denial of confirmation of the Proposed Plan.

First, the Trustee states that the Debtors' failure to pro-rate their 401(k) loan balances causes the Debtors

to have "nominal monthly disposable income…and substantially reduces the amount available to

unsecured creditors."[5]  Objection, ¶ 2(b).  Second, the Trustee states that the Debtors' Proposed Plan was

not submitted in good faith.  Objection, ¶ 2(c).  In the Response, the Trustee addressed neither argument.

Instead, the Response recasts the substance of the Objection and exclusively argues that confirmation

should be denied because the Debtors' Proposed Plan fails to allocate the entirety of their projected

disposable income as required by 11 U.S.C. §1325(b).[6]  The Trustee does not object to the continuance of

the Debtors' Existing Contributions.  Rather, the Trustee objects to the Debtors' plan based on the

inclusion of the Proposed Contributions.  The Trustee asserts that as a matter of law the Debtors are not

permitted to offset from the amount of their projected disposable income the amount of their increased

post-petition contributions to their respective 401(k) retirement plans.

The parties do not dispute whether the Debtors may deduct from their projected disposable

---

[5] This Court acknowledges that the fact that a chapter 13 plan provides for a nominal repayments is in and of itself insufficient to deny plan confirmation.  *In re Hines*, 723 F.2d 333, 334 (3d Cir. 1983) (recognizing "that Chapter 13 plans providing for nominal repayments to unsecured creditors do not, for that reason, violate the good faith standard of 11 U.S.C. §1325(a)(3)").

[6] The disposable income requirement is set forth by §1325(b)(1) that provides:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan-
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. §1325(b)(1).

4

income the amount of their respective 401(k) loan repayments[7] or whether the Debtors may continue to make their Existing Contributions. At issue is whether the Debtors may increase their post-petition contributions to their respective 401(k) retirement plans to offset an increase in their projected disposable income resulting from the completion of repayment of existing loans from the same retirement plans. Specifically, this Court must determine whether pursuant to §541(b)(7) of the Bankruptcy Code the amount of the Debtors' post-petition contributions is limited to the amount of their Existing Contributions or may be increased post-petition to the amount of their Proposed Contributions.

**I.** **_The Proposed Plan Must Account for the Completion of the 401(k) Loan Repayments_**

Upon objection to the confirmation of a chapter 13 plan, "the court may not approve the plan unless ... the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period ... will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. §1325(b)(1)(B). To determine whether the Debtors are entitled to exclude the Proposed Contributions from their projected disposable income, this Court's inquiry must begin with an analysis of the relevant provisions of the Bankruptcy Code. *Ransom v. FIA Card Services, N.A.*, 131 S.Ct. 716, 723 (2011); *United States v. Cooper*, 396 F.3d 308, 310 (3d Cir. 2005) ("It is well settled that the first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.") (internal quotations and citations omitted). Here, this Court must interpret the sections of the Bankruptcy Code relevant to the calculation of a chapter 13 debtor's projected disposable income.

**II.** **_Application of the Means Test to Determine Projected Disposable Income_**

In *Hamilton v. Lanning*, 130 S.Ct. 2464 (2010), the Supreme Court addressed the meaning of the term "projected disposable income" as used by §1325(b)(1)(B). The Supreme Court in *Hamilton* noted that the Bankruptcy Code does not define the term "projected disposable income." *Hamilton*, 130 S.Ct. at

---

[7] Pursuant to §1322(f), a debtor's repayments of a loan taken from her 401(k) plan may not be considered income for purposes of funding a chapter 13 plan. *See, e.g., In re Egebjerg*, 574 F.3d 1045 (9th Cir. 2009) (observing "in BAPCPA, Congress expressly gave Chapter 13 debtors the ability to deduct 401(k) payments from their disposable income calculation"); *In re Devilliers*, 358 B.R. 849, 859 (Bankr. E.D. La. 2007) ("under the amendments to §1325(b)(2)(A)(ii), repayments on loans from retirement accounts are now allowed as a deduction from disposable income on Form B22C").

2469. However, the Bankruptcy Code does define "disposable income." In relevant part, disposable

income is defined as "current monthly income received by the debtor ... less amounts reasonably

necessary to be expended ... for the maintenance or support of the debtor." 11 U.S.C. §1325(b)(2).

Section 1325(b)(3)[8] directs this Court to rely on the "means test" set forth by §707(b)(2)[9] to determine the

"amounts reasonably necessary to be expended."

Due to the failure of the Bankruptcy Code to explain the difference between a debtor's disposable

income as defined by §1325(b)(2) and a debtor's *projected* disposable income as incorporated by

§1325(b)(1)(B), a split of opinion developed with regard to the issue. In one camp, courts applied a

mechanical approach of simply multiplying the debtor's disposable income as calculated by Form B22C

by the duration of a debtor's proposed plan. *See, e.g., In re Kagenveama*, 541 F.3d 868, 872-73 (9th Cir.

2008); *In re Bardo*, 379 B.R. 524 (Bankr. M.D. Pa. 2007). In the other, courts considered the Form B22C

calculation to be a starting point that may be adjusted to account for changes in the debtor's income that

were reasonably certain to occur during the plan period. *See, e.g, In re Roberts*, Bky. No. 07-15653, 2008

WL 4279549 (Bankr. E.D. Pa. Sept. 17, 2008) (holding that the test of projected disposable income as

enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA")

requires debtors to propose a plan that steps up payments to include amounts now being properly

dedicated to repayments of their pension loans); *In re Davis*, 392 B.R. 132, 139 (Bankr. E.D. Pa. 2008);

*In re May*, 381 B.R. 498, 509 (Bankr. W.D. Pa. 2008) ("the term 'projected disposable income' is nothing

but a forward-looking best guestimate of the debtor's future disposable income"). The split was resolved

by the Supreme Court when, in *Hamilton,* it adopted the forward-looking approach to calculating whether

a debtor has proposed a plan that accounts for the entirety of her projected disposable income. *See*

*Hamilton*, 130 S.Ct. at 2478. As stated by the Supreme Court, "[c]onsistent with the text of §1325 and

---

[8] In relevant part, §1325(b)(3) reads: "Amounts reasonably necessary to be expended under paragraph (2), other than
subparagraph (A)(ii) of paragraph (2), shall be determined *in accordance with subparagraphs (A) and (B) of section 707
(b)(2)*…" (emphasis added).
[9] As recently explained by the Supreme Court:
> "The means test instructs a debtor to deduct specified expenses from his current monthly income. The
> calculation of this formula is implemented by Form B22C. The result, a debtor's 'disposable income,' is the
> amount he has available to reimburse creditors."
*Ransom*, 131 S.Ct. at 721.

pre-BAPCPA practice, we hold that when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." *Id.* Pursuant to this rule, the Debtors' disposable income as calculated by their Form B22C must be considered the starting point for the calculation of their projected disposable income.

Here, the Debtors' Form B22C establishes that the Debtors have a disposable income of $514.07. Although the Debtors' Proposed Plan proposes to disburse to creditors all of their disposable income as calculated by their Form B22C, application of *Hamilton*'s forward-looking approach makes clear that the Debtors plan must account for the completion of repayment of their respective 401(k) loans. However, it is not clear whether the Debtors may account for this event by increasing the amount of their post-petition 401(k) contributions.

At first glance, Judge Sigmund's decision in *Roberts* appears to resolve the issue now before this Court. In that decision, Judge Sigmund addressed an objection to plan confirmation that argued that the plan did not allocate the entirety of a debtor's disposable income because the plan failed to step up plan payments when the debtor completed repayment of 401(k) loans. *See In re Roberts*, 2008 WL 4279549, at *2. Decided prior to *Hamilton*, Judge Sigmund focused her decision on whether to adopt the forward-looking approach to account for the cessation of the 401(k) loan repayments during the plan period. Rather than reach the issue, she relied on the fact that even if the amount of the loan repayments were added to the debtor's monthly net income, the debtor's projected monthly net income would still be negative. As such, the debtor would have had no disposable income regardless what test was applied. In addition to the limited grounds upon which Judge Sigmund based her decision, *Roberts* may be distinguished from the facts now before this Court. In *Roberts*, the proposed plan did not attempt to offset the additional income that became available upon repayment of the 401(k) loans with a post-petition increase in 401(k) contributions. As a result, the decision did not address whether §541(b)(7) permits a debtor to deduct from her projected disposable income retirement contributions begun or increased during the post-petition period. To do so, this Court must address the text of §541(b)(7).

***III.***    ***Interpretation of 11 U.S.C. §541(b)(7)***

Section 541(b)(7) is among the changes to the Code adopted by BAPCPA.  The effect of

§541(b)(7)[10] is to exclude from a debtor's estate 401(k) contributions.  Because qualifying contributions

are not property of a chapter 13 estate, such amounts may not be included in the calculation of a debtor's

projected disposable income.  *See, e.g., In re Roth*, Bky. No. 10-13287, 2010 WL 2485951, at *2 (Bankr.

D.N.J. Jun. 14, 2010) (acknowledging "amounts withheld or received by employers from employees for

various benefits plans are not property of the estate and are not disposable income for purposes of section

1323(b)(2)").  *In re Oltjen*, Bky. No. 07-60534, 2007 WL 2329695, at *3 (Bankr W.D. Tex. Aug. 13,

2007) ("As excluded income, the contributions are not a deduction because they were never included in

income in the first instance.");  *In re Devilliers*, 358 B.R. 849, 859 (Bankr. E.D. La. 2007) ("mandatory or

voluntary contributions to qualified retirement plans are not property of the estate, nor are they considered

when calculating disposable income.").  However, like many of the provisions of the Bankruptcy Code

added by BAPCPA, this Court finds the text of §541(b)(7) less than clear.  In relevant part, §541(b)(7)

reads:  "Property of the estate does not include … any amount … received by an employer from

employees for payments as contributions to [a qualifying retirement account] … except that such amount

under this subparagraph shall not constitute disposable income as defined by section 1325(b)(2)…"  11

U.S.C. §541(b)(7)(B).  The text contains no language prescribing how a court should calculate the amount

of retirement contributions a debtor may make.  Significantly, §541(b)(7) makes no references to whether

that amount must be fixed as of the petition date or may be adjusted to account for changes in a debtor's

post-petition circumstances.

Although decisions addressing this issue remain sparse, a split of opinion has developed among

courts as to whether the text of §541(b)(7) permits debtors to increase the amount of their post-petition

retirement contributions.  In one camp, courts infer from the context of §541(b)(7) within §541 that the

---

[10] In relevant part, §541(b)(7)(B) reads:
>"Property of the estate does not include- any amount … received by an employer from employees for
>payment as contributions- to- an employee benefit plan that is subject to title I of the Employee Retirement
>Income Security Act of 1974 [29 USC §§ 1001 et seq.] … except that such amount under this subparagraph
>shall not constitute disposable income, as defined in section 1325(b)(2)…"

11 U.S.C. §541(b)(7)(A)(i).

amount of a debtor's retirement contributions must be fixed as of the petition date.  *See, e.g., Burden v. Seafort* (*In re Seafort*), 437 B.R. 204 (6th Cir. BAP 2010) (relying on §541(b)(7)'s placement within §541 to limit contributions to the amount extant as of the petition date); *In re Noll*, Bky. No. 10-35209, 2010 WL 5336916 (Bankr. E.D. Wis. Dec. 21, 2010) (adopting *Seafort*'s analysis).

In the other camp, courts have determined that the omission of language limiting the amount of contributions grants debtors the discretion to set the amount of their post-petition contributions at any amount and this discretion is limited only by the good faith requirement imposed by §1325(a)(3).  *See, e.g., In re Jones*, Bky. No. 07-10902, 2008 WL 4447041, at *5 (Bankr. D. Kan. Sept. 26, 2008); *In re Mati*, 390 B.R. 11, 18 (Bankr. D. Mass. 2008); *In re Devilliers*, 358 B.R. at 867; *Baxter v. Johnson (In re Johnson)*, 346 B.R. 256, 263 (Bankr. S.D. Ga. 2006).

Finally, in a third camp, at least one court has found that as a matter of law §541(b)(7) does not permit post-petition retirement contributions in any amount regardless of whether or not a debtor was making prepetition retirement contributions.  *In re McCullers*, Bky. No. 10-34281, 2011 WL 2358568 (Bankr. N.D. Cal. Jun. 8, 2011).

In their arguments before this Court, neither party disputed whether as a matter of law the Debtors are entitled to continue making retirement contributions in the amount of the Existing Contributions.  As a result, this Court's analysis will focus on the persuasiveness of the respective positions of the first two camps.  *Scully v. U.S. WATS, Inc.*, 238 F.3d 497, 515-16 (3d Cir. 2001) (stating "a judgment can usually only be based on grounds raised by the parties.").

A.     **The Textual Basis for Rule Limiting Retirement Contributions to the Amount Extant as of the Petition Date**

The Trustee is asking this Court to adopt a rule limiting the amount of a debtor's retirement contributions to the amount extant as of the Petition Date.  The leading case addressing this interpretation of §541(b)(7) is *Burden v. Seafort* (*In re Seafort*), 437 B.R. 204 (6th Cir. BAP 2010).  In *Seafort*, the Bankruptcy Appellate Panel of the Sixth Circuit ("BAP") addressed "whether a debtor, who was not contributing to an ERISA qualified plan when the case was filed, may begin making 401(k) contributions

9

once the 401(k) loan has been repaid." *Id.* at 207.  As the Trustee now advocates, the BAP adopted a *per*

*se* rule fixing the amount of retirement contributions to the amount of a debtor's contributions made as of

the date of filing for bankruptcy relief.  *Id.* at 210.  The BAP reached this result by reasoning "[p]roperty

of the estate under §541(a)(1) and exclusions from property of the estate under §541(b) must both be

determined on the date of the filing of the case."  *Id.* at 209.  Central to the BAP's analysis was the

omission of language from §1306 providing for the exclusion of 401(k) contributions.  As explained by

the BAP:

> Notably, [§1306], which addresses property and earnings that come into existence *after*
> the debtor files a petition for relief does not exclude 401(k) contributions from property
> of the estate.  Rather, 401(k) contributions are only excluded in §541 which specifically
> applies to property in existence at the commencement of the case.  Because Congress
> identified 401(k) contributions as excluded in §541, but not in §1306, the Panel
> concludes that the absence of any reference in §1306 to 401(k) contributions was
> intentional.  Congress did not intend for income which becomes available post-petition to
> be excluded from property of the chapter 13 estate or from the calculation of projected
> disposable income.

*Id.* at 209 (emphasis in original and citations omitted).

Relying on the absence from §1306(a)(2) of language similar to §541(b)(7), the BAP inferred

from the context of §541(b)(7) within §541, which generally determines what is property of a debtor's

estate as of the petition date, that the amount of retirement contributions excluded from a debtor's estate

must be determined as of the petition date.  The BAP reasoned that a debtor would be permitted to

increase the amount of post-petition contribution only if §1306 included language reflecting §541(b)(7).

*Id.* at 209.  However, not only does §1306 omit language similar to §541(b)(7), it omits language

reflecting any of §541(b)'s exclusions.  According to the BAP's reasoning, none of §541(b)'s exclusions

would apply post-petition, a result that this Court finds to be both at odds with the plain meaning of

§1306 and the prospective nature of chapter 13 estates.

The preamble of §1306 and subsection (a)(1) both make reference to the entirety of §541, not just

§541(a).  The text provides no basis to read the references in §1306 to §541 to incorporate only the

inclusions provided under §541(a) and not the exclusions provided under §541(b).  Moreover,

§1306(a)(2) does not provide, in and of itself, a textual basis to infer that §541(b)'s exclusions, let alone

§541(b)(7) specifically, would not be applicable post-petition. To the extent §1306(a)(2) includes in a

chapter 13 estate "earnings from services performed by the debtor after the commencement of the case

but before the case is closed," 11 U.S.C. §1306(a)(2), this Court finds that the purpose of this text is to

expand the scope of §541(a)(6). *In re Clouse*, 446 B.R. 690, 699 (Bankr. E.D. Pa. 2010) (observing the

purpose of §1306(a)(2) is to expand §541(a)(6)). With this purpose in mind, this Court is unable to infer

from the text of §1306(a)(2) any intent to limit the application of §541(b)'s exclusions to property

existing as of the petition date.[11]

Not only does this Court find no textual basis to hold that §1306 does not incorporate on a

prospective basis the exclusions provided by §541(b), this Court finds this reading to be odds with the

nature of chapter 13 cases. Unlike cases commenced under chapters 7 and 11, the petition date in chapter

13 proceedings is not determinative of the scope of a chapter 13 estate. Section 1306(a)(1) incorporates

into a chapter 13 estate "all property of the kind specified in [§541] that the debtor acquires *after the*

*commencement of the case but before the case is closed, dismissed, or converted…*" 11 U.S.C.

§1306(a)(1) (emphasis added). This language makes clear that property of the type specified by §541 that

is acquired post-petition by a chapter 13 debtor, and not just post-petition income, becomes part of that

debtor's chapter 13 estate. *See, e.g., In re Willett*, 544 F.3d 787, 791 (7th Cir. 2008) (finding that a fee

simple interest acquired post-petition became property of the debtor's chapter 13 estate); *In re Waldron*,

536 F.3d 1239, 1242-43 (11th Cir. 2008) (finding that claims for underinsured-motorist benefits that

accrued post-petition were property of the estate pursuant to §1306(a)(1)); *In re Education Assistance*

---

[11] This Court notes that as of the petition date the Debtors interest in their future income was and remains contingent. Until the Debtors' actually receive their bi-weekly paycheck, the Debtors' income is technically not property of their estate. Not only could the Debtors conceivably lose their jobs, the Debtors could conceivably be promoted. Each scenario would have an effect on the value of the contingent right to payment the Debtors held as of their petition date. As in cases addressing the valuation of other types of contingent interests held by debtors at the time of filing for relief, this Court finds that the proper method for valuing a contingent interest would be at the time that the right vests and actually becomes property of the Debtors' chapter 13 estate. *See, e.g., In re Willett*, 544 F.3d 787, 792 (7th Cir. 2008) (valuing fee simple interest acquired post-petition as of the date it became part of the debtor's chapter 13 estate and not as of the debtor's petition date). Theoretically speaking, as a contingent interest, a debtor's right to future income should be valued as of the date each paycheck becomes property of the debtors' chapter 13 estate. However, this Court recognizes that treating a debtor's contingent right to future income as being vested property of a chapter 13 estate operates as a rule of thumb that both (i) obviates the practical impossibility of either valuing each paycheck on the date it vests in a debtor's estate or adopting some sort of convoluted present value method to value as of the petition date a debtor's future stream of paychecks and (ii) satisfies this this Court's obligation to ensure that the Proposed Plan provides for the entirety of Debtors' projected disposable income.

*Corp. v. Zellner*, 827 F.2d 1222, 1225 (8th Cir. 1987) ("the definition of 'property of the estate' in section

1306 includes the kinds of property specified in section 541"); *McLean v. Central States, Southeast and*

*Southwest Areas Pension Fund*, 762 F.2d 1204, 1206 (4th Cir. 1985) ("for purposes of Chapter 13

proceedings [§1306(a)] draws into the definition of estate property after-acquired property of the debtor

that would qualify under §541 as estate property."); *In re Doemling*, 127 B.R. 954, 956 n.1 (W.D. Pa.

1991) ("section 1306 which makes property the debtor acquires after the bankruptcy property of the

estate").  Fixing the amount of contributions as of the petition date may be reasonable in the context of a

chapter 7 or chapter 11 cases but is at odds with the prospective nature of chapter 13 estates.  *See, e.g., In*

*re Willett*, 544 F.3d at 792 (valuing fee simple interest acquired post-petition as of the date it became part

of the debtor's chapter 13 estate and not as of the debtor's petition date); *In re Lenton*, 358 B.R. 651, 660

(Bankr. E.D. Pa. 2006) ("a Chapter 13 case is prospective, *i.e.*, it encompasses a debtor's current and

future financial circumstances for a period of three to five years"); *In re Mayeaux*, 269 B.R. 614, 626

(Bankr. E.D. Tex. 2001) ("It is elementary bankruptcy law that all post-petition earnings of a Chapter 13

debtor and all property which a Chapter 13 debtor acquires in the post-petition period constitutes property

of the bankruptcy estate").  Based on the reference in §1306 to the entirety of §541, this Court finds a

reading of §1306 that incorporates on an ongoing basis the exclusions of §541(b), inclusive of §541(b)(7),

to be more consistent with the dynamic nature of chapter 13 cases.

      **B.**      **Textual Basis for Allowance of Post-petition Increases of Retirement Contributions**

      Courts finding that debtors are permitted to increase their post-petition contributions rely on the

absence from §541(b)(7) of any qualifying language limiting the amount of contributions a debtor may

make.  *See, e.g., In re Mati*, 390 B.R. at 17; *In re Nowlin*, 366 B.R. 670, 676 (Bankr. S.D. Tex. 2007)

*aff'd In re Nowlin*, 576 F.3d 258 (5th Cir. 2009); *Baxter*, 346 B.R. at 263.  Rather than compare

§541(b)(7) to §1306, such courts rely on a comparison between §541(b)(7), §707(b)(2) and §1325(b).  As

one court has observed:

> unlike the provisions of §707(b)(2) and §1325(b)(2) or (3), §541(b)(7) does not modify
> excluded contributions based on reasonableness or necessity.  Throughout the other
> applicable sections of the Code, every deduction offered is modified by a requirement

that the expense be necessary and reasonable.  Yet, §541(b)(7) omits any reference to this
important limitation on the exclusion.  Instead, §541(b)(7) simply declares that the
contributions are "not disposable income as defined in §1325(b)(2)."  Although
§1325(b)(2) contemplates, as a general premise, that reasonably necessary expenses for
the support and care of the debtor and his dependents are the only deductions allowed, the
more specific provisions of §541(b)(7) control over the general.

*Devilliers*, 358 B.R. at 864-65.

The Trustee's reliance on the Supreme Court's recent decision in *Ransom* as a basis for this

Court's interpretation of §541(b)(7) is misplaced.  In *Ransom*, the Supreme Court parsed the text of

§707(b)(2) to determine whether an above-median debtor may deduct from his projected disposable

income vehicle ownership expenses relating to an automobile that is owned free and clear.  The Supreme

Court held that the debtor was not eligible to claim such expenses where a debtor has no costs relating to

a car loan or lease.  *Ransom*, 131 S.Ct. at 725.  The Supreme Court reached this result by relying on the

plain meaning of §707(b)(2)(A)(ii)(I) and, in particular, the meaning of the word "applicable."  As

explained by the Supreme Court:

What makes an expense amount "applicable" in this sense (appropriate, relevant, suitable,
or fit) is most naturally understood to be its correspondence to an individual debtor's
financial circumstances.  Rather than authorizing all debtors to take deductions in all
listed categories, Congress established a filter: A debtor may claim a deduction from a
National or Local Standard table (like "[Car] Ownership Costs") if but only if that
deduction is appropriate for him…

If Congress had not wanted to separate in this way debtors who qualify for an allowance
from those who do not, it could have omitted the term "applicable" altogether.  *Without
that word, all debtors would be eligible to claim a deduction for each category listed in
the Standards.*  Congress presumably included "applicable" to achieve a different result.

*Ransom*, 131 S.Ct. at 724 (emphasis added).

As the Supreme Court observed in *Ransom*, this Court agrees that without some sort of qualifying

term that creates a threshold for eligibility, *e.g.,* "applicable," the text of §541(b)(7) suggests all debtors

are eligible to claim a deduction for retirement plan contributions regardless of the amount of

contributions incurred prepetition.  Had Congress omitted "applicable" from §707(b)(2), the Supreme

Court reasoned that debtors would be entitled to claim the full amount of vehicle ownership expense

regardless of whether such expense was incurred prepetition.  Accordingly, in calculating their projected

disposable income, the Supreme Court reasoned that under this hypothetical version of §707(b)(2) debtors

would have been entitled to increase the post-petition amount of vehicle ownership expense. *Id.* at 724-

25.  The Supreme Court avoided this result by relying on the term "applicable."  Unlike §707(b)(2), not

only did Congress omit the term "applicable," or any other qualifying language from §541(b)(7),

§541(b)(7) refers to "*any* amount."  Consistent with the Supreme Court's opinion in *Ransom*, this Court

infers from the absence of any term creating a threshold for eligibility that Congress did not intend to

limit §541(b)(7)'s scope to the amount of a debtor's pre-petition retirement contributions.

Similarly, this Court finds the reasoning of the Supreme Court's decision in *Hamilton* to be

consistent with a reading of §541(b)(7) that does not limit the amount of retirement contributions to the

amount as of the petition date.  In *Hamilton*, the Supreme Court addressed whether a debtor's financial

circumstances as of the petition date is determinative of the calculation of a debtor's projected disposable

income.  As discussed above, *Hamilton* rejected application of a mechanical approach that calculated

projected disposable income by multiplying the debtor's disposable income as calculated by Form B22C

by the duration of the debtor's proposed plan.  To reach this result, the Supreme Court observed "when

Congress wishes to mandate simple multiplication, it does so unambiguously – most commonly by using

the term 'multiplied.'"  *Hamilton*, 130 S.Ct. at 2472.

This Court observes that the same may be said for when Congress wishes to mandate that the

petition date controls.  For example, in the context of calculating the amount of exemptions a debtor may

claim, Congress has expressly indicated courts must determine the "value" of a debtor's exemption by

reference to the "fair market value *as of the date of the filing of the petition* or, with respect to property

that becomes property of the estate after such date, a*s of the date such property becomes property of the*

*estate*." 11 U.S.C. §522(a)(2) (emphasis added).[12]  Had Congress intended to limit the amount of

retirement contributions a debtor may deduct from projected disposable income to the amount extant as of

---

[12] Other sections that make explicit reference to the petition date as controlling a court's inquiry include §101(14) (definition of
"disinterested persons"), §101(22A) (definition of "financial participant"), §109(e) (defining who may be a chapter 13 debtor),
§502(b) (claim valuation); §506(a)(2) (determining value of property to which secured claim attaches); §507(a)(1) (determining
the amount of domestic support obligations having priority), and §547(c)(5) (identification of unavoidable transfers).

the petition date, Congress could have inserted similar language into §541(b)(7).  Just as the Supreme

Court relied on Congress's omission of a term requiring "multiplication" to infer that a forward-looking

approach was preferable, this Court finds that Congress's omission from §541(b)(7) of any reference to

the petition date suggests that that Congress did not intend a debtor's petition date to be determinative of

the amount of post-petition retirement contributions a debtor may offset from her projected disposable

income.

Not only is *Hamilton*'s textual analysis instructive, this Court believes that adopting a rule that

fixes the amount of a debtor's expenses, including 401(k) contributions, as of the petition date is contrary

to the forward-looking approach adopted by *Hamilton*.  If pursuant to *Hamilton*, this Court "may account

for changes in the debtor's income *or expenses* that are known or virtually certain at the time of

confirmation," *Hamilton*, 130 S.Ct. at 2478 (emphasis added), this Court sees no reason to depart from

this rule in application of §541(b)(7).

In addition to finding that *Ransom* and *Hamilton* suggest a reading of §541(b)(7) that does not fix

a debtor's retirement contribution expenses as of the petition date, this Court finds this interpretation to be

consistent with Congressional policy.  Unlike the case of whether a debtor is entitled to deduct vehicle

ownership expenses, the subject of retirement contributions presents two conflicting policy

considerations.  Admittedly, this Court must interpret BAPCPA's provisions consistent with the policy

"to ensure that debtors pay creditors the maximum they can afford."  *Ransom* 131 S.Ct. at 725 (quotations

omitted).  However, when addressing retirement savings, this Court must also interpret BAPCPA's

provisions consistent with policy favoring personal retirement savings.  When balancing these two

considerations, Congress intended to tilt this balance in favor of retirement savings and away from

ensuring debtors pay to creditors the maximum amount that they can afford.  *In re Sibila,* Bky. No. 09-

64754, 2010 WL 4365741, at *5 (Bankr. N.D. Oh. Oct. 28, 2010) ("By passing section 541(b)(7),

Congress elevated the public policy in favor of retirement savings above the bankruptcy policy that favors

maximum repayment to unsecured creditors"); *In re Smith*, No. 09-64409, 2010 WL 2400065, at *3

(Bankr. N.D. Oh. Jun. 15, 2010) ("the enactment of section 541(b)(7) injected a policy favoring

15

retirement savings into the bankruptcy code."); *Mati*, 390 B.R. at 17 ("Congress has implemented a policy

of protecting and encouraging retirement savings."); *Lenton*, 358 B.R. at 664 ("payroll deductions for his

Monthly Loan Payment and voluntary 401(k) contributions are untouchable in the context of a Chapter 13

plan."); *Baxter*, 346 B.R. at 263 ("Congress has placed retirement contributions outside the purview of a

Chapter 13 plan."); *In re Njuguna,* 357 B.R. 689, 691 (Bankr. D.N.H. 2006) ("Congress sought to protect

401k contributions by excluding them from the bankruptcy estate and providing that neither 401k

contributions nor 401k loan payments shall constitute disposable income.").  Together with §1322(f) and

§362(b)(19),[13] §541(b)(7) reflects Congress' decision to depart from the standard policy of ensuring

maximum repayment to unsecured creditors.  In BAPCPA's legislative history, Congress specifically

recognized that amendments relating to "some retirement, education, and other savings generally would

make less money available [to creditors]."  H.R. REP. 109-31(I), 2005 WL 832198, at *35 (Apr. 8, 2005).

This Court further recognizes that Congress's interest in protecting retirement savings is not a

policy that was first acted upon in BAPCPA.  Bankruptcy courts have long recognized Congress holds "a

deep and continuing interest in the preservation of pension plans, and in encouraging retirement savings."

*In re Williams*, 290 B.R. 83, 85 (Bankr. E.D. Pa. 2003) *citing Velis v. Kardanis*, 949 F.2d 78, 82 (3rd Cir.

1991).

In addition to being unwilling to adopt a rule that limits the amount of contributions a debtor may

make to whatever amount existing as of the petition date, this Court finds that announcing such a rule will

have no practical effect.  Pursuant to such a rule, any debtor may prior to filing simply increase the

amount of her prepetition contributions to an amount sufficient to render her projected disposable income

to some nominal amount.  Rather than deter bad faith conduct, the Trustee's interpretation of §541(b)(7)

would tacitly approve such behavior.  *See, e.g., NMSBPCSLDHB v. Integrated Telecom Express, Inc. (In

re Integrated Telecom Express, Inc.)*, 384 F.3d 108, 127 (3d Cir. 2004) (stating "we believe it to be a

truism that it is not bad faith to seek to avail oneself of a particular protection in the Bankruptcy Code -

---

[13]  Qualifying language is also omitted from §1322(f) which permits the deduction from projected disposable income 401(k) loan
repayments and §362(b)(19) which permits continuation of the 401(k) loans deductions without violating the automatic stay.

Congress enacted such protections with the expectation that they would be used."); *see also In re Hines*,

723 F.2d 333, 334 (3d Cir. 1983) (recognizing "that Chapter 13 plans providing for nominal repayments

to unsecured creditors do not, for that reason, violate the good faith standard of 11 U.S.C. §1325(a)(3)").

Although some arbitrariness must be tolerated in application of the Bankruptcy Code, *see, e.g., Ransom*,

131 S.Ct. at 729 (acknowledging that "Congress chose to tolerate the occasional peculiarity that a

brighter-line test produces"), this Court is not persuaded that the text of §541(b)(7) or any other provision

of the Bankruptcy Code supports adopting a rule that would encourage bad faith conduct.

Despite recognizing that the text of §541(b)(7) contains no basis to adopt a *per se* rule prohibiting

post-petition increases in retirement contributions, this Court is unwilling to acknowledge that the

potential abuse of §541(b)(7) is without redress. Rather, this Court finds that where the facts of a specific

case indicate that a debtor may be attempting to game the system by increasing the amount of pre or post-

petition 401(k) contributions, courts should rely on the good faith requirement of §1325(a)(3) to deny

plan confirmation. "[G]ood faith should serve as a backstop against debtors who aggressively game

BAPCPA's provisions at the expense of bankruptcy policies, including fairness to unsecured creditors."

*In re Smith*, 2010 WL 2400065, at *3 (finding that debtor proposed plan in bad faith by increasing the

amount of his 401(k) contribution by five times on the eve of filing for bankruptcy); *see also In re*

*Shelton*, 370 B.R. 861, 867 (Bankr. N.D. Ga. 2007). Because the Trustee raised the issue of good faith in

its Objection, this Court will now consider whether the Debtors' circumstances indicate that their plan

was not proposed in good faith.

### IV.     *Whether the Plan was Proposed in Good Faith, 11 U.S.C. §1325(a)(3)*

In the Trustee's Objection, the Trustee argues that the Debtors' plan fails to comply with

§1325(a)(3) in that it was not proposed in good faith. For whatever reason and despite having the burden

of showing that the Debtors' Proposed Plan does not satisfy §1325(b), *In re Orawsky*, 387 B.R. 128, 138

(Bankr. E.D. Pa. 2008), the Trustee failed to address this issue in his Response. The Trustee presents no

evidence of bad faith other than the Proposed Plan's alleged failure to allocate the entirety of the Debtors'

projected disposable income. The Trustee's argument with regard to good faith is duplicative of its

17

arguments relating to whether, as a matter of law the Debtors may offset their post-petition retirement contributions from their projected disposable income.  Having found that §541(b)(7) contains no basis to adopt a *per se* rule prohibiting increases in post-petition 401(k) contributions, this Court finds that, absent additional circumstances, bad faith cannot be inferred from the Debtors' decision to increase their post-petition 401(k) plan contributions.  Generally speaking, bad faith cannot be inferred from conduct permitted by the Bankruptcy Code.  *See, e.g., NMSBPCSLDHB*, 384 F.3d at 127 (3d Cir.2004); *In re Jones*, 2008 WL 4447041, at *5 (rejecting "the Chapter 13 Trustee's argument that the Debtors' post-petition commencement of retirement plan contributions, standing alone, establishes that their Chapter 13 plan was not proposed in good faith."); *Baxter*, 346 B.R. at 265 (holding that debtors who increased their 401(k) contributions "may fund 401(k) plans in good faith, so long as their contributions do not exceed the limits legally permitted by their 401(k) plans.").  Absent additional indicia of bad faith, this Court finds that the Debtors' Proposed Contributions, in and of themselves, are not grounds to deny confirmation pursuant to §1325(a)(3).

Even if this Court were to consider the entirety of the Debtors' circumstances and not just those relied upon by the Trustee, the current record contains little evidence of bad faith conduct.  *See, e.g., In re Liley*, 91 F.3d 491, 496 (3d Cir. 1996) ("holding that the good faith of Chapter 13 filings must be assessed on a case-by-case basis in light of the totality of the circumstances").  Of particular significance, the Debtors applied the proceeds of the 401(k) loans to existing indebtedness, a fact the parties do not dispute.  As a result, the Debtors do not present the case where they used their respective 401(k) loans to incur additional indebtedness or to make additional expenditures that otherwise reduced the pool of funds available to repay their creditors.  *See, e.g., Ransom*, 131 S.Ct. at 730 (noting that debtor did not use assets to pay down existing indebtedness); *In re Vansickel*, 309 B.R. 189, 210 (Bankr. E.D. Va. 2004) (acknowledging that where a debtor uses retirement loans to repay creditors, "the creditors would already have benefitted from the loan and the debtor would not have taken any undue advantage of them").  In addition, the fact Debtors are close to retirement age and have few assets set aside to provide for their impending retirements is evidence that weighs in favor of a finding that the Proposed Contributions are

18

not made in bad faith. *New York City Employees Ret. Sys. v. Sapir (In re Taylor)*, 243 F.3d 124, 129-30 (2d Cir. 2001) (identifying factors to be considered, including "the age of the debtor and the amount of time until expected retirement," as to the reasonableness of proposed retirement contributions); *Devilliers*, 358 B.R. at 865 ("By providing for a debtor's eventual retirement, retirement contributions become part of debtor's fresh start."). Also weighing in favor of a finding of good faith, the Debtors, if forced to forego the Proposed Contributions, will be deprived of the benefit of the matching contributions provided by their respective employers, an eventuality that would further erode their capacity to save for the eventual retirements. Because the Trustee has failed to meet its burden of presenting evidence that the Debtors' Proposed Plan does not satisfy §1325(a)(3), this Court will overrule the Objection.

SUMMARY

For the reasons stated above, this Court finds that §541(b)(7) contains no language from which this Court may infer a basis to adopt a *per se* rule prohibiting the Debtors' from increasing the amount of their post-petition contributions to their respective 401(k) plans. Because this Court finds the Debtors' Proposed Plan commits all projected disposable income over its term and this Court also finds no basis to infer that the Debtors' Proposed Plan was proposed in bad faith, the Objection is overruled. The Debtors' Proposed Plan will be confirmed.

An Order consistent with this Opinion will be entered.

Dated:  August 30, 2011

MAGDELINE D. COLEMAN
UNITED STATES BANKRUPTCY JUDGE

19